Gretchen L. Staft
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gretchen_staft@fd.org

*Counsel for Defendant Jesse Walter Hadley*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>JESSE WALTER HADLEY,<br><br>                Defendant. | Case No. 3:24-cr-00101-VMK-KFR<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Defendant Jesse Walter Hadley, through counsel, Gretchen L. Staft, Assistant Federal Defender, submits this memorandum in anticipation of his sentencing hearing scheduled for December 1, 2025 at 10:30 a.m. At sentencing, Mr. Hadley will ask the court to impose a sentence of 120 months, in accordance with the plea agreement, followed by 5 years of supervised release. Such a sentence reflects the nature and circumstances of the offense as well as Mr. Hadley's history and characteristics, and is sufficient, but not more than necessary to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### I.    ADVISORY GUIDELINE COMPUTATION

The PSR calculates a total offense level of 19, with a corresponding guideline range of 46 to 57 months (Criminal History Category IV). Mr. Hadley does not object to the guideline calculation in the technical sense but notes that his offense level was increased

for "specific offense characteristics" that can hardly be characterized as specific to his offense, as they are essentially part and parcel of modern offenses. For example, according to the U.S. Sentencing Commission, the 2-point enhancement for "use of a computer" was applied in 97.3 percent of § 2G2.2 cases nationwide in 2024. *See* U.S. Sentencing Commission, *Use Of Guidelines And Specific Offense Characteristics*, Fiscal Year 2024, at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2024/Ch2_Guideline_FY24.pdf.

## II. STATUTORY SENTENCING FACTORS

As a general matter, strict adherence to the sentencing guidelines was struck down in *United States v. Booker*, 543 U.S. 220 (2005). Rather, the guidelines are just one of many factors the court must consider to fashion a sentence that is "sufficient but not greater than necessary" to achieve the sentencing goals enumerated in 18 U.S.C. § 3553(a). *Id*.

While all sentencing proceedings are to begin by determining the applicable guideline range, the District Court may not presume the guideline range is reasonable. *Rita v. United States*, 551 U.S. 338, 352 (2007)(citing *Booker*, 543 U.S. at 259-60). Nor should the guidelines range be given more or less weight than any of the sentencing factors among those set out in 18 U.S.C. § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Gall v. United States*, 552 U.S. 38, 46 (2007).

In this case, a sentence of 120 months followed by 5 years of supervised release is a fair application of § 3553(a) factors, including the advisory sentencing guidelines.

//

1) <u>The Nature and Circumstances of the Offense</u>

Mr. Hadley surreptitiously filmed his then-girlfriend's 17-year-old daughter on a single occasion by placing a tablet owned by the victim's family in her bedroom, which captured her grooming and dressing following a shower. There is no evidence that the video was transmitted to any other device or service from the tablet on which it was recorded, which remained in the victim's family's household. While certainly an unlawful and unjustifiable invasion of the victim's privacy, neither the instant conduct nor Mr. Hadley's history suggests a general interest in or risk to minors generally.

2) <u>Mr. Hadley's History and Characteristics</u>

Mr. Hadley has endured significant hardships and losses throughout his childhood and adult life, and much of his involvement in the justice system appears related to trauma and substance use. The instant sentence is far and away the greatest penalty he has ever faced. While his longest active sentence previously imposed was just 120 days, he is now confronting a full decade of imprisonment in addition to being forevermore labeled as a sex offender.

This case represents his rock bottom. He deeply regrets his actions in this matter and the impact they had on the victim. Though he had been in a very dark place, during his incarceration he has sought redemption through religious texts, which have helped him build a healthier perspective on his situation and hope for his future. He will continue to seek out not only religious programming, but many other forms of rehabilitative and vocational programming during his incarceration to help ensure his stability following his

release, which will not occur until he has reached his 40s. Fortunately, Mr. Hadley has strong work skills and family support, which he will do his best to maintain at a distance as he completes his sentence in the lower 48.

3) <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; to Protect the Public from Further Crimes of the Defendant; and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner</u>

A decade-long prison sentence followed by 5 years of supervised release and a lifelong label as a sex offender amply reflects the seriousness of the offense, promotes respect for the law, protects the public, and affords adequate general and specific deterrence. Mr. Hadley will be ineligible for Earned Time Credit under the First Step Act, meaning that he will serve a longer percentage of his sentence behind bars than other inmates receiving similar sentences for other offenses.

Though treatment services will be available during his term of supervision, Mr. Hadley intends to access rehabilitative programs during his term of imprisonment. A five-year term of supervision following his release will not only serve the goals of protection of the public and rehabilitation, but also deterrence, as a further term of supervision or incarceration can be imposed in the event of unsatisfactory compliance during his term. Though many of the conditions suggested in the PSR will serve both Mr. Hadley and the community following release, the defense respectfully objects to several suggested special conditions.

a) *Supervision Conditions*

Conditions of supervised release must be "reasonably related" to the statutory sentencing factors under 18 U.S.C. 3553(a)(1), 3553(a)(2)(b)-(d) and must involve no greater deprivation of liberty than is reasonably necessary for deterrence, protection of the public and training, and treatment. It is the government's burden to show that a condition is justified. *United States v. Weber*, 451 F3d 553 (9th Cir. 2006).

i. Computer/Internet Restrictions

The defense respectfully objects to suggested special conditions 8-11 and 16 because Mr. Hadley's offense did not involve use of the internet and he has no history of using the internet to contact minors or to commit other crimes. Therefore, the suggested restrictions on computer and internet access are not reasonably related to the applicable statutory factors and involve a greater deprivation of liberty than necessary. *See e.g. United States v. Freeman*, 316 F.3d 386, 391-2 (3d Cir. 2003) (conditions restricting defendant's possession of computer or use of online computer service were overbroad and involved greater deprivation of liberty than necessary where defendant had no record of using internet to contact children).

ii. Restrictions on Contact with Minors

The defense objects to suggested special conditions 13-15 because there is no evidence that Mr. Hadley poses a risk to minors generally, and because the conditions will unreasonably infringe upon his right to have contact with his own children. As detailed by the Ninth Circuit in *United States v. Wolf Child*:

> The substantive due process right to family integrity or to familial association is well established. A parent has a fundamental liberty interest in companionship with his or her child. It is perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court. This interest occupies a unique place in our legal culture, given the centrality of family life as the focus for personal meaning and responsibility. Far more precious than property rights, parental rights have been deemed to be among those essential to the orderly pursuit of happiness by free men, and to be more significant and priceless than liberties which derive merely from shifting economic arrangements.

*United States v. Wolf Child*, 699 F.3d 1082, 1091–92 (9th Cir. 2012) (internal citations omitted). "Interference with the right of familial association requires a powerful countervailing interest" and must not be infringed without specific findings regarding particular evidence in the record and how that evidence justifies a particular restriction. *Id*. at 1092. "[A] generalized assessment based on the class of sex offenders generally, rather than on the particular sex offenses a defendant has committed or related offenses he is likely to commit ..., cannot fulfill the mandate that a term of supervised release satisfy the 'reasonably related' standard." *Id*. at 1094 (internal citation omitted). Moreover, even in cases where a person may pose a risk to children generally, that does not "demonstrate that he poses a risk to his *own children*." *Id*. In *Wolf Child* the Ninth Circuit found that the district court's conclusory statements that the defendant was "now a convicted sex offender" and "cannot be trusted with minor children," could not justify infringements on the defendant's parental and familial association rights and struck down conditions that substantially mirror those proposed in the instant matter. *See also United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006) ("There is no evidence in the record that Mr. Davis has ever sexually abused a child or that he would try to abuse his daughter once released from

prison. Because no such evidence exists, a condition of supervised release that limits Mr. Davis's access to his daughter is not reasonably necessary either to protect Mr. Davis's daughter or to further his rehabilitation."). Likewise, because there is no evidence in the record suggesting that Mr. Hadley poses a risk to minor children generally, much less his own children, the Court must decline to impose proposed special conditions 13-15.

### iii. Medication

The defense objects to the compelled medication condition (#5) as unwarranted, overbroad, and an undue restriction on Mr. Hadley's constitutional liberty interests. *See United States v. Williams*, 356 F.3d 1045, 1053 (9th Cir. 2004) ("The Supreme Court has thrice recognized a liberty interest in freedom from unwanted antipsychotic drugs. Both convicted prisoners and pretrial detainees possess a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.") (internal citations omitted). Proposed special condition #4 is sufficient to address Mr. Hadley's mental health needs without unreasonably infringing upon his constitutional liberty interests.

4) <u>The Kinds of Sentences Available</u>

There is no mandatory minimum jail sentence in this case, and probation is legally permissible. While certain monetary penalties must be imposed – a $100 special assessment, for example – a JVTA assessment should not be imposed in this matter, as the

statute governing this penalty lapsed on September 30, 2025.[1] As such, the court is not authorized to impose this assessment. However, even without the sunsetting of the JVTA, such an assessment would have only been authorized as to "non-indigent" defendants.

5) <u>The Need to Provide Restitution to Any Victims of the Offense</u>

The defense is unaware of any request for restitution at this time.

### III. CONCLUSION

For the foregoing reasons, a sentence of 120 months followed by 5 years of supervised release is sufficient to meet the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

DATED at Anchorage, Alaska this 24th day of November, 2025.

Respectfully submitted,
FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Gretchen L. Staft*
Gretchen L. Staft
Assistant Federal Defender

<u>Certificate of Service</u>:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on November 24, 2025. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gretchen L. Staft*

---

[1] The JTVA was enacted in 2015 and expired on September 30, 2025: "Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 30, 2025…" 18 U.S.C. § 3014(a).